IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RICHARD BARNHARDT, JR.,

    Petitioner,

    v.

WARDEN, NORTH CENTRAL
CORRECTIONAL COMPLEX,

    Respondent.

CASE NO. 2:20-CV-3330
JUDGE SARAH D. MORRISON
Chief Magistrate Judge Elizabeth P. Deavers

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  This matter is before the Court on the Petition, Respondent's Return of Writ,

Petitioner's Reply, and the exhibits of the parties.  For the reasons that follow, it is

**RECOMMENDED** that this action be **DISMISSED.**

## I.     FACTS AND PROCEDURAL HISTORY

Petitioner challenges his convictions after a jury trial in the Meigs County Court of Common

Pleas on aggravated vehicular homicide, vehicular manslaughter, and OVI.  The Ohio Fourth

District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶1} This is a consolidated appeal from a Meigs County Court of Common Pleas
> judgment entry convicting Appellant, Richard Barnhart, Jr., of four felonies and
> one misdemeanor, as well as another judgment entry denying Appellant's motion
> for a new trial. Specifically, Appellant was convicted of one count of aggravated
> vehicular homicide, a first-degree felony in violation of R.C. 2903.06(A)(1)(a) and
> (B)(2)(b) and (c), one count of aggravated vehicular homicide, a first-degree felony
> in violation of R.C. 2903.06(A)(2)(a) and (B)(3), one count of vehicular
> manslaughter, a first-degree misdemeanor in violation of R.C. 2903.06(A)(4) and
> (D), one count of OVI, a fourth-degree felony in violation of R.C. 4511.19(A)(1)(a)
> and (G)(1)(d), and one count of OVI, a fourth-degree felony in violation of R.C.
> 4511.19(A)(1)(f) and (G)(1)(d). On appeal, Appellant contends that 1) the trial
> court erred when it failed to grant a new trial pursuant to Ohio Rule of Criminal
> Procedure 33; 2) the trial court erred when it denied his motion to suppress all

1

evidence obtained from the warrantless seizure; 3) the verdict finding him guilty was against the manifest weight of the evidence; and 4) trial counsel provided ineffective assistance of counsel in regards to obtaining an affidavit in support of a motion for new trial.

{¶2} Because we find no error in the trial court's denial of his motion to suppress, Appellant's second assignment of error is overruled. Likewise, as Appellant's convictions were not against the manifest weight of the evidence, his third assignment of error is overruled. Further, in light of our finding that the trial court did not abuse its discretion in denying Appellant's request for a new trial, his first assignment of error is overruled. Finally, because we conclude any deficient performance by counsel in obtaining an affidavit in support of a motion for a new trial did not affect the outcome of the ruling on the motion, his fourth assignment of error is overruled. Accordingly, the decision of the trial court is affirmed.

FACTS

{¶3} Appellant, Richard Barnhart, Jr., was involved in a motor vehicle accident on January 13, 2017, at approximately 10:10 p.m. on State Route 143 in Meigs County, Ohio. When first responders initially arrived at the scene of the accident, they found an individual identified as Jesse Carr deceased and underneath the vehicle in a ditch area. They also found Appellant, initially moaning but otherwise unresponsive, partially ejected through the windshield of the vehicle. The record reveals that the victim, Jesse Carr, had been pronounced dead and Appellant had already been transported to the hospital by the time law enforcement reached the scene of the accident. The investigation of the accident, however, ultimately led to Appellant's indictment on February 16, 2017 on multiple charges, including: 1) a first-degree felony in violation of R.C. 2903.06(A)(1)(a) and (B)(2)(b) and (c); 2) one count of aggravated vehicular homicide, a first-degree felony in violation of R.C. 2903.06(A)(2)(a) and (B)(3); 3) one count of vehicular manslaughter, a first-degree misdemeanor in violation of R.C. 2903.06(A)(4) and (D); 4) one count of OVI, a fourth-degree felony in violation of R.C. 4511.19(A)(1)(a) and (G)(1)(d); and 5) one count of OVI, a fourth-degree felony in violation of R.C. 4511.19(A)(1)(f) and (G)(1)(d).

{¶4} Appellant pleaded not guilty to the charges and the case proceeded through the discovery process. Appellant filed a very general, yet lengthy, motion to suppress on March 20, 2017. Pertinent to the issues presently raised on appeal, Appellant sought suppression of the evidence obtained from Appellant while he was at the hospital, specifically the test results from a blood draw ordered by law enforcement, claiming it was involuntary, unconstitutionally coerced and without cognizance of his mental capacity at the time. Appellant also argued that the withdrawal of his blood was not conducted within two hours of the alleged violation. Appellant further argued that the provisions of Ohio's Implied Consent statute contained in R.C. 4511.191 were not applicable because Appellant was not validly arrested.

{¶5} A suppression hearing was held on May 24, 2017, and was followed by the submission of written arguments. The State presented testimony by Sergeant Robert L. Hayslip, the officer who initially responded and investigated the accident scene. The State also presented testimony by Trooper Chris Finley, the trooper who responded to the hospital and ordered a sample of Appellant's blood be drawn, as well as Kelci Wanat, the Holzer Medical Center Emergency Room nurse who was attending Appellant and who drew the blood upon Trooper Finley's request. The trial court ultimately denied Appellant's motion on June 29, 2017, finding that Appellant was unconscious at the time his blood was drawn pursuant to Ohio's Implied Consent statute and that he was never in custody or under arrest that night. The trial court further determined that Appellant's blood was drawn within the applicable three-hour time limitation. Further, in denying Appellant's motion, the trial court reasoned that a warrant to draw Appellant's blood was not needed due to the consent exception (here, implied consent), as well as the exigent circumstances exception to the warrant requirement.

{¶6} Thus, the matter proceeded to a jury trial beginning on January 30, 2018. The State presented several witnesses in support of its case, including: 1) Ronald Haning, Jr., a neighbor who witnessed or at least heard a portion of the accident; 2) Luther Lee Osborne, Jr., whose yard the vehicle ultimately came to rest in after the accident; 3) Dr. Dan Whitely, the Gallia County Coroner; 4) Ohio State Highway Patrol Crime Lab Criminalist/Toxicologist Nicholas Baldauf, who testified to performing tests upon Appellant's blood which identified .269 grams by weight of alcohol per one hundred milliliters of whole blood (more than three times the legal limit in Ohio); 5) Sergeant Robert L. Hazlett, who responded to and investigated the accident scene; 6) Trooper Marvin Pullins, who was trained in accident reconstruction and noted there were no tire or skidmarks on the roadway where the accident occurred, and virtually no damage to the driver's side of the vehicle; 7) Rutland Fire Department fire fighter Jason McDaniel, who was the first responder to encounter Appellant while he was still partially ejected through the windshield; 8) Rutland Fire Department fire fighter Brad Smith, who also responded to assist Appellant; 9) Trooper Shawn Cunningham, who photographed the accident scene; and 10) Trooper Christopher Finley, who made contact with Appellant at the hospital, obtained a blood sample, and then reported to the accident scene where he took the statement of Ronald Haning, Jr. Appellant only presented one witness in his defense, and that was his friend, Leslie Nicholson, who testified that Appellant and the victim had been at her house earlier in the evening on the night of the accident, and had left at approximately 6:00 or 6:30 p.m., with Jesse Carr driving the vehicle. More detailed discussion regarding the State's witness's testimony is set forth below.

{¶7} Defense counsel's theory at trial was that Appellant was not the driver of the vehicle and that even if he was the driver, his driving did not cause the accident which caused the death of Jesse Carr. Instead, he argued that the oncoming dark-colored SUV, reported by Mr. Haning to have been driving left of center, caused

the accident to occur. The State argued that Appellant was, in fact, the driver of the vehicle as evidenced by statements of the first responders as to his location in the vehicle as well as a statement made by Appellant to first responders that "I fucked up, didn't I[,]" when asked by a medic if he was the driver of the vehicle. The State also argued Appellant, not the driver of the dark-colored SUV, caused the accident, relying on Mr. Haning's second statement which described the SUV as only driving on the center line, not being left of center, and stating that both vehicles should have been able to pass.

{¶8} The jury ultimately accepted the State's version of events and found Appellant guilty on all counts of the indictment, as charged, including specifications included due to the fact that Appellant had been convicted of four previous OVI offenses. Appellant was sentenced to an aggregate prison term of fourteen years and now brings his timely appeal, setting forth four assignments of error for our review.

ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT A NEW TRIAL PURSUANT TO OHIO RULE OF CRIMINAL PROCEDURE 33.

II THE TRIAL COURT ERRED WHEN IT SUPPRESSED [SIC] DEFENDANT-APPELLANT'S MOTION TO SUPPRESS ALL EVIDENCE OBTAINED FROM THE WARRANTLESS SEIZURE OF THE DEFENDANT-APPELLANT.

III THE VERDICT FINDING THE DEFENDANT-APPELLANT GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

IV. TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL IN REGARDS TO OBTAINING AN AFFIDAVIT IN SUPPORT OF A MOTION FOR NEW TRIAL."

*State v. Barnhart*, 4th Dist. Nos. 18CA8, 18CA15, 2019 WL 1422870, at *1-2 (Ohio Ct. App. Feb.

12, 2019). On February 12, 2019, the appellate court affirmed the trial court's judgment. *Id.* On

July 10, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v*

*Barnhart*, 156 Ohio St.3d 1454 (Ohio 2019). On July 1, 2019, Petitioner filed an application to

reopen the appeal pursuant to Ohio Appellate Rule 26(B) (ECF No. 7, PAGEID # 457.) On

September 23, 2019, the appellate court denied the Rule 26(B) application. (PAGEID # 493.) On

November 14, 2019, the Ohio Supreme Court dismissed Petitioner's subsequent appeal for want

of prosecution due to Petitioner's failure to file a memorandum in support of jurisdiction. *State v. Barnhart*, 157 Ohio St.3d 1488 (Ohio 2019).

On July 2, 2020, Petitioner filed this *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254. He asserts that his convictions violate the Fourth Amendment (claim one); that he was denied the effective assistance of trial and appellate counsel (claims two and four); and that the trial court unconstitutionally denied his motion for a new trial (claim three). It is the Respondent's position that Petitioner's claims are waived, non-cognizable, or without merit.

## II.    FOURTH AMENDMENT

Petitioner asserts that the trial court unconstitutionally permitted admission of blood-alcohol evidence obtained by police in violation of the Fourth Amendment. This claim does not provide Petitioner a basis for relief. Fourth Amendment claims generally do not provide a basis for federal habeas corpus relief, so long as the petitioner had an opportunity to present the claim to the state courts. *Stone v. Powell*, 428 U.S. 465, 482 (1976); *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (opportunity for full and fair litigation of a Fourth Amendment claim exists where the state procedural mechanism presents an opportunity to raise the claim, and presentation of the claim was not frustrated by a failure of that mechanism.)

> One, the key purpose of federal habeas corpus is to free innocent prisoners. But whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty. [*Stone v. Powell*], at 490, 96 S.Ct. 3037. Two, exclusion is a prudential deterrent prescribed by the courts, not a personal right guaranteed by the Constitution. Any deterrence produced by an additional layer of habeas review is small, but the cost of undoing final convictions is great. *Id*. at 493, 96 S.Ct. 3037.

*Good v. Berghuis*, 729 F.3d 636, 637 (6th Cir. 2013). Ohio permits a criminal defendant to file a motion to suppress evidence prior to trial. Ohio R. Crim. P. 12(C)(3). Here, the record reflects no basis upon which to find that Petitioner could not present his claims under the Fourth Amendment because of a failure of Ohio's procedural mechanism. To the contrary, the trial court held a hearing

on Petitioner's motion to suppress evidence before denying the motion (see ECF No. 7, PAGEID # 115, 122) and the appellate court thereafter affirmed the trial court's denial of Petitioner's motion to suppress evidence. *State v. Barnhart*, 2019 WL 1422870, at *3-9. Petitioner thereafter had the opportunity to raise the issue in the Ohio Supreme Court. Thus, although Petitioner did not obtain a ruling in his favor, he had multiple opportunities to litigate this claim.

Claim one does not provide a basis for relief.

### III.   INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

#### a. Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the

6

course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review."  *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).  One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted.  That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. As the Supreme Court found in *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*).  First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.  Second, the court must determine whether the state courts actually enforced the state procedural sanction.  Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.  *Maupin*, 785 F.2d at 138.  Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause

sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id.*

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to "'protect the integrity' of the federal exhaustion rule." Id., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were

8

no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

**b.  Application**

Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to raise on appeal a claim of insufficiency of the evidence, and instead argued that his convictions were against the manifest weight of the evidence.  Petitioner, however, did not raise this same issue in the Ohio Court of Appeals in Rule 26(B) proceedings.  (*See Entry on Application for Reopening*, ECF No. 7, PAGEID # 493.)  Moreover, the Ohio Supreme Court dismissed Petitioner's subsequent appeal for failure to prosecute because Petitioner failed to file a memorandum in support of jurisdiction in compliance with the Rules of Practice of the Supreme Court of Ohio.  (ECF No. 7, PAGEID # 541.)  Petitioner thereby has procedurally defaulted his claim of ineffective assistance of appellate counsel.  *See Agostini v. Collins*, No. 20-3028, 2020 WL 3815671, at *2 (6th Cir. June 15, 2020) (failure to file a memorandum in

support of jurisdiction in the Ohio Supreme Court constitutes a procedural default); *James v. Warden*, No. 1:06-cv-212, 2007 WL 2326867, at *4 (S.D. Ohio Aug. 10, 2007) (same). Further, Petitioner has failed to establish cause for his procedural default.

Claim four is procedurally defaulted.

### III.    DENIAL OF MOTION FOR A NEW TRIAL

Petitioner similarly has waived his claim that the trial court unconstitutionally denied his motion for a new trial by failing to present any federal issue to the state appellate court.

### a.   Exhaustion

In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of his constitutional claim to the state courts as a federal constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Although the fair presentment requirement is a rule of comity, not jurisdiction, *see Castille v. Peoples,* 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45, (1999), it is rooted in principles of comity and federalism designed to allow state courts the opportunity to correct the State's alleged violation of a federal constitutional right that threatens to invalidate a state criminal judgment. In the Sixth Circuit, a Petitioner can satisfy the fair presentment claim in one of four manners: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Further, general allegations of the denial of constitutional rights, such as the rights to a fair trial or due process, are insufficient to satisfy the "fair presentment" requirement. *Id.*

**b. Application**

Petitioner asserts that the trial court unconstitutionally denied his motion for a new trial, in violation of due process. The appellate court affirmed the trial court's denial of the motion for a new trial as follows:

> Appellant contends the trial court erred when it failed to grant a new trial pursuant to Ohio Rule of Civil Procedure 33. A review of the record reflects that Appellant filed a motion for a new trial within one month of his sentencing on the basis of newly discovered evidence, namely the affidavit of Warren "Chase" Payne, which stated Mr. Payne had a brief interaction with Appellant and the victim shortly before the accident occurred, and also alleged the victim, not Appellant, was driving the car at that time. The State, however, argues the newly discovered evidence alleged by Appellant was not material to the case, and did not disclose a strong probability it would change the result if a new trial was granted.

> {¶51} The Ohio Rules of Criminal Procedure provide that a motion for new trial may be made on several grounds including, inter alia, "newly discovered evidence." Crim.R. 33 provides, in pertinent part, as follows:

>> "(A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

>> * * *

>> (6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses."

> {¶52} The decision to grant or deny a motion for new trial is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54, paragraph one of the syllabus (1990). " 'To prevail on a motion for a new trial based on newly discovered evidence, a defendant must show: the new evidence has been discovered since trial; the new evidence is material to the issues; the new evidence could not have been

11

discovered before trial even with the exercise of due diligence; the new evidence is not cumulative to the former evidence; the new evidence discloses a strong probability that it will change the result if a new trial is granted; and the new evidence does not merely impeach or contradict former evidence.'" *State v. Nichols*, 4th Dist. Adams No. 11CA912, 2012-Ohio-1608, ¶ 61; citing *State v. Urbina*, 3rd Dist. No. 4–06–33, 2007–Ohio–3131, ¶ 20; citing *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370, syllabus (1947).

{¶53} Here, the State does not dispute Appellant has demonstrated four of the six factors necessary for granting a new trial. For instance, the State concedes the new evidence has been discovered since trial, the new evidence could not have been discovered before trial even with the exercise of due diligence, the new evidence is not cumulative to the former evidence, and the new evidence does not merely impeach or contradict former evidence. The State disputes, however, that Appellant has demonstrated the new evidence is material to the issues, and that the new evidence discloses a strong probability that it will change the result if a new trial is granted.

{¶54} With respect to whether the new evidence is material to the issues, the State contends that although the new evidence, in the form of Warren Payne's testimony, if believed, appears to be material to the issue of who was driving the vehicle at the time of the accident, because Mr. Payne ultimately could not confirm the exact date or time of his meeting with Appellant and the victim prior to the accident, his testimony was not material to the issue of who was driving when the accident occurred at 10:10 p.m. on January 13, 2017. The State argues this is especially true in light of photographs taken of the vehicle after the accident which demonstrate very little damage to the driver's side, compared to the passenger side of the vehicle. The State argues a jury would have to ignore simple physics to believe the victim was driving the vehicle and Appellant was in the passenger seat, but then somehow "miraculously" switched places at the time of the crash. The State also cites to the statement made by Appellant to first responders, "I fucked up, didn't I[ ]" as substantial proof Appellant was the driver of the vehicle. Further, we have already determined under Appellant's third assignment of error that his convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, which necessarily included a determination that Appellant was, in fact, the driver of the vehicle at the time of the accident.

{¶55} With respect to whether the newly discovered evidence discloses a strong probability that it will change the result if a new trial is granted, the State contends it is "quite clear" that it does not. The State argues Mr. Payne's testimony lacked credibility and that a reasonable person would not know which part of his testimony to believe due to the inconsistency of the testimony regarding the date and time of his alleged encounter with Appellant and the victim prior to the accident. The State further argues this newly discovered evidence would not change the result of a new trial.

{¶56} Based upon our review of the record before us, which includes Appellant's motion for a new trial along with Mr. Payne's supporting affidavit, transcripts from Mr. Payne's interview with law enforcement, as well as Mr. Payne's testimony given during the hearing held on the motion for a new trial, we agree with the State and conclude Appellant has failed to demonstrate the newly discovered evidence was material to the issues at trial or discloses a strong probability that it will change the result if a new trial is granted. Although Appellant argues on appeal that Mr. Payne's testimony demonstrated he saw the victim, Jesse Carr, and Appellant at Zion Church, which is located approximately .4 miles from the accident scene, at approximately 9:50 p.m. on January 13, 2017, the night of the accident, and that the victim was driving the car, we find that a review of his testimony fails to establish any of those facts with sufficient certainty. As Appellant notes, no one has disputed that Mr. Payne saw Appellant and the victim at Zion Church at some time; however, Mr. Payne's testimony was, at best, inconsistent and confusing as to when exactly this meeting occurred in relation to the time of the accident.

{¶57} As indicated above, after the jury trial was concluded in this matter and the verdict was announced, Warren "Chase" Payne came forward and contacted Appellant's attorney informing him he had information about the case. It appears Appellant's trial counsel at the time prepared an affidavit for Mr. Payne's signature, which was filed as an attachment in support of Appellant's motion for a new trial. In summary, the new evidence presented by Appellant in support of his motion consisted of an affidavit from Mr. Payne averring, in pertinent part, that he left his home at 9:30 p.m. on the evening of January 13, 2017, and headed towards the gas station to buy snacks for his wife. He averred that he saw a black Audi stopped near the church at the foot of Horner Hill near the intersection of Zion Road and State Route 143, which is located about .4 miles from where the accident at issue occurred. He further averred that because he recognized the vehicle as belonging to Appellant, he stopped and then also saw both Appellant and the victim, Jesse Carr, whom he also knew, standing outside the car. He averred that after discussing (for a minute or two) with the victim that Appellant was intoxicated, the victim informed him he was going to drive. He further averred that he observed the victim get into the driver's seat, while Appellant was in the passenger seat, and then drive away turning left (which as it turns out was in the direction of where the accident occurred).

{¶58} The record indicates thereafter Mr. Payne voluntarily appeared at the Gallia County Patrol Post to be interviewed by Trooper James D. Hannon. During this interview, Mr. Payne was less precise, stating he left his house on the night in question "around 9:00, around 9:30, 9:25..." He further stated he sat in the church lot talking to Appellant and the victim for "probably five, six minutes, so I'd say uh, 9:55, between 9:55 and 10:00." Mr. Payne also informed the trooper he helped the victim put Appellant in the passenger seat, and the victim got into the vehicle and drove away. This version of events was not included in his affidavit. Further questioning by the trooper led to the discovery that several statements in Mr. Payne's affidavit were incorrect, including that Mr. Payne recognized the black car

as an Audi, or that it was owned by Appellant, that Mr. Payne estimated the distance from the crash scene to be .4 miles, that Appellant was standing outside the vehicle when Mr. Payne initially stopped, and the length of time of the conversation that took place that night. Mr. Payne explained to the trooper that the affidavit was prepared by Appellant's counsel and had already been notarized when he signed it, and that he pointed out several errors that were supposed to be corrected, but apparently were not corrected before the affidavit was filed.

{¶59} Before the interview concluded, however, Mr. Payne changed his account of the night in question, stating he actually left his house at 9:45. He then stated was not absolutely sure what the time was when he saw Appellant and the victim, only that it was dark out. He agreed it could have been 8:00 or 8:30, or even 6:00, but maintained he was sure the date was January 13, 2017. However, the record before us indicates that after the interview was concluded, Mr. Payne exited the station but then returned and told the trooper he may have actually seen the men the night of the January 12, 2017, rather than January 13, 2017.

{¶60} Nevertheless, a hearing on Appellant's motion for a new trial was subsequently held. Mr. Payne testified at the hearing and the inconsistency in his testimony was substantial. He claimed that although he told the trooper he believed the date he saw the men was actually January 12, 2017, he now believed it was the 13th because it was the day he purchased a Pontiac, which he said he was driving that night. However, later in his testimony he departed from this theory and again stated it could have been on the 12th and he may have been driving a borrowed vehicle that night. Ultimately, Mr. Payne could not definitely confirm he saw the men on January 13, 2017. Further, as to the time, Mr. Payne could only confirm with 75% certainty that he encountered the men at 9:45. In fact, he testified during the hearing that it was "[h]onestly probably, probably closer to six[,]" and that the only reason he told everybody it was 9:30 was because "that seemed logical." It was clear during the hearing that all he could really recall was that it was dark outside. Interestingly, he also testified that he had no independent recollection as to what vehicle he was driving that night, but rather was operating off of a statement his wife made.

{¶61} Upon review, it appears Mr. Payne was an extremely agreeable witness, practically agreeing with anything and everything that was suggested to him to the point it was impossible to discern when his meeting with Appellant and the victim actually occurred. For instance, the following exchange took place during his cross-examination:

"Q: So is it safe to say you have no idea whatsoever what time this happened?

A: Yes Sir.

14

Q: Okay. And you indicated that you believe that this happened on the thirteenth because of your new vehicle but you also told me that it could have been the twelfth because you was [sic] in your buddy's vehicle?

A: Right.

Q: Correct? And Attorney Toy uh pointed out um something about the clock and nine forty-five and when he mentioned the clock you thought that it had to been [sic] the Pontiac but uh, would you agree that most vehicles have a clock in them?

A: Most of em, yea.

Q: And in fact it could have been your buddy's vehicle that you looked at it and it had a clock?

A: Right.

Q: But even that time nine forty-five you don't know if that's accurate either right?

A: Right.

Q: So what we're left here with your testimony is you can't tell this Court for sure, one hundred percent for sure that this happened on the thirteenth?

A: Right.

Q: And you can't say for sure, one hundred percent for sure, at what time this happened?

A: Right.

Q: Nothing further Your Honor."

Despite what appeared to be a genuine truth-seeking mission by both defense counsel and the prosecutor, and despite numerous rounds of re-direct and re-cross, it still remained unclear what day or time Mr. Payne encountered Appellant and the victim.

{¶62} Considering Mr. Payne's testimony in full, we cannot conclude that Appellant demonstrated the newly discovered evidence was material to the issues of whether Appellant was the driver at the time the accident occurred or that it disclosed a strong probability that it would change the result if a new trial was granted. As such, we are unable to conclude that the trial court abused its discretion in denying Appellant's motion for a new trial. Accordingly, Appellant's first assignment of error is overruled and the trial court's denial of Appellant's motion is affirmed.

*State v. Barnhart,* 2019 WL 1422870, at \*16-19.

The record indicates that Petitioner did not present any federal issue to the state appellate court. Instead, he asserted solely that the trial court erred in failing to grant his motion for a new trial under the Ohio Rules of Criminal Procedure. He did not refer to the Due Process Clause, the Constitution, or to any state or federal cases relying on federal law in support of this claim. (*See Brief of Appellant,* ECF No. 7, PAGEID # 182-87.) He thereby has waived any federal claim for review in these proceedings.

## IV.    MERITS

### a.   Standard of Review

The standards of the Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case. The United States Supreme Court has described the AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20  (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

The AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

16

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Further, under the AEDPA, the factual findings of the state court are presumed to be correct:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)), *cert. denied sub nom. Coley v. Robinson*, 571 U.S. 992 (2013). The United States Court of Appeals for the Sixth Circuit has summarized these standards as follows:

A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,] or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389. 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Id*. at 748-49. The burden of satisfying the AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### b. Application: Ineffective Assistance of Trial Counsel

Petitioner asserts that he was denied the effective assistance of trial counsel. The state appellate court rejected this claim:

> {¶63} In his fourth assignment of error, Appellant contends trial counsel provided ineffective assistance in regards to obtaining an affidavit in support of a motion for new trial. Appellant argues defense counsel was seriously deficient in the performance of his duties in obtaining an affidavit from a crucial witness, Warren "Chase" Payne. More specifically, Appellant argues that his trial counsel should have either recorded conversations with Mr. Payne himself or allowed Mr. Payne to write out his own affidavit, rather than taking information from recorded conversations between Mr. Payne and Appellant's sister and then having Mr. Payne sign a pre-prepared affidavit that contained a number of inaccuracies. Appellant contends that "pre-preparing an affidavit of a crucial witness and not [making] corrections before the affidavit was signed * * * lead [sic] to the denial of a motion for new trial which should have been granted." The State responds by arguing that although trial counsel's performance in obtaining Mr. Payne's affidavit was inappropriate, and likely unethical, it was not deficient because obtaining the affidavit accomplished the goal of obtaining a motion hearing. The State further argues the motion was denied, not because of any deficiency in the affidavit, but rather because Mr. Payne's testimony during the hearing on the motion for a new trial was "confusing, convoluted, and unbelievable[,]" which created credibility issues unrelated to any issue with his affidavit.

> {¶64} Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441 (1970); *State v. Stout*, 4th Dist. Gallia No. 07CA5, 2008-Ohio-1366, ¶ 21. To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95 (citations omitted). "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378,

389, 2000-Ohio-448, 721 N.E.2d 52, (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

{¶65} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. Washington No. 2008CA11, 2008-Ohio-482, ¶ 10; citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988).

{¶66} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different. *State v. White*, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus. Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated. *See State v. Clark,* 4th Dist. Pike No. 02CA684, 2003-Ohio-1707, ¶ 22; *State v. Tucker*, 4th Dist. Ross No. 01CA2592, 2002-Ohio-1597*; State v. Kuntz*, 4th Dist. Ross No. 1691, 1992 WL 42774.

{¶67} Here, as indicated above, Appellant's counsel obtained an affidavit from Chase Payne and filed it with the trial court in support of a motion for a new trial. Without going into great detail which we find ultimately to be inconsequential, counsel prepared an affidavit for Mr. Payne's signature based upon recorded conversations between Mr. Payne and Appellant's sister. Apparently counsel never met with or spoke to Mr. Payne personally before preparing the affidavit. Further, it appears the affidavit was already notarized before counsel obtained Mr. Payne's signature. Additionally, upon meeting with Mr. Payne and being informed there were several inaccuracies in the affidavit, counsel went ahead and obtained Mr. Payne's signature and represented to him that the affidavit would be corrected before filing. Counsel then filed the affidavit without making corrections. Errors in the affidavit became apparent during Mr. Payne's interview with Trooper Hannon, as the information Mr. Payne was giving was inconsistent with the affidavit, which had been reviewed by the trooper. Upon questioning, Mr. Payne explained the details regarding the signing of the affidavit.

{¶68} The errors in the affidavit were also discussed at length during the hearing on the motion for the trial. In fact, as noted by the State, the trial court essentially went over the affidavit line by line with Mr. Payne to get an understanding of what

was accurate and what was not. It does not appear from the record that the trooper, the prosecutor or the judge held the inaccuracies or inconsistencies in the affidavit against Mr. Payne as compared to his testimony. Further, while we certainly do not condone Appellant's counsel's methods used in preparing the affidavit and, in fact, we share in the State's belief that such actions were improper, we cannot conclude that the actions of counsel in preparing and filing the affidavit resulted in deficient performance. This is because, as argued by the State, despite the fact that the affidavit was inaccurate and improperly prepared, the trial court still held a hearing on the motion. To that extent, counsel's performance was not necessarily deficient. However, to the extent it could be argued such action resulted in deficient performance, Appellant cannot show prejudice in light of the fact he was still granted a hearing on his motion and the trial court appears to have decided the motion on the merits of Mr. Payne's hearing testimony rather than any deficiency in the affidavit filed in support of the motion.

{¶69} We agree with the State that Appellant's motion was denied, not because of any failure with regard to Mr. Payne's affidavit, but rather due to Mr. Payne's hearing testimony. As discussed more fully and quoted verbatim, in part, above, Mr. Payne could not state with certainty the time or date he saw Appellant and victim. It was unclear throughout his testimony whether he was driving his new Pontiac or a borrowed vehicle at the time. It was also unclear whether he saw them on January 12th or January 13th. It was also unclear whether he saw them at 6:00 p.m., 8:00 p.m., 9:00 p.m. or closer to 10:00 p.m. The only things Mr. Payne was certain about were that he saw them prior the accident, that it was dark outside, and that at that time the victim, rather than Appellant, was driving the car. As we noted above, this newly discovered evidence did not warrant a new trial. Further, it was the deficiencies in Mr. Payne's hearing testimony that resulted in the denial of the motion, not the preparation or filing of the affidavit by trial counsel.

{¶70} As such, based upon a review of the record, we cannot say Appellant's motion for a new trial would have been granted in the absence of deficient performance on the part of defense counsel in obtaining the affidavit in support of the motion. And here, Appellant has not demonstrated prejudice. Thus, we find no merit to Appellant's fourth assignment of error. Accordingly, we affirm the judgment of the trial court.

*State v. Barnhart,* 2019 WL 1422870, at *19-21.

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing

claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984).

*Strickland* requires a petitioner claiming the ineffective assistance of counsel to demonstrate that

his counsel's performance was deficient and that he suffered prejudice as a result.  *Id*. at 687;

*Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir.), *cert. denied sub. nom. Hale v. Hoffner*, 134 S.

Ct. 680 (2013).  A petitioner  "show[s] deficient performance by counsel by demonstrating 'that

counsel's representation fell below an objective standard of reasonableness.'"  *Poole v.

MacLaren*, 547 F. A'ppx 749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536

(6th Cir. 2011) (internal quotation marks omitted)); (citing *Strickland*, 466 U.S. at 687), *cert.

denied*, 135 S. Ct. 122 (2014).  To make such a showing, a petitioner must overcome the "strong

[ ] presum[ption]" that his counsel "rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 687.  "To

avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance.'"  *Bigelow v.

Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

The United States Supreme Court has cautioned federal habeas courts to "guard against

the danger of equating unreasonableness under *Strickland* with unreasonableness under §

2254(d)."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  The Court observed that while

"[s]urmounting *Strickland's* high bar is never . . . easy[,] . . . [e]stablishing that a state court's

application of *Strickland* was unreasonable under § 2254(d) is even more difficult."  *Id.* (citations

and quotations omitted).  The Court instructed that the standards created under *Strickland* and §

2254(d) are both "highly deferential, and when the two apply in tandem, review is doubly so."

*Id*. (citations and quotations omitted).  Thus, when a federal habeas court reviews a state court's

determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether

counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Applying this deferential standard of review, Petitioner cannot establish that relief is warranted. As discussed by the state appellate appellate court, the record fails to establish that prejudice, as that term is defined under *Strickland,* from any error by counsel in submitting Payne's affidavit in support of the motion for a new trial. The trial court held a hearing on the motion and denied Petitioner's motion on the basis of Payne's testimony and not due to any inaccuracies or deficiencies in the affidavit.

Petitioner's claim of ineffective assistance of trial counsel is without merit.

## V. DISPOSITION

Accordingly, it is **RECOMMENDED** that this action be **DISMISSED.**

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of

the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

__s/ Elizabeth A. Preston Deavers_____
**ELIZABETH A. PRESTON DEAVERS**
**CHIEF UNITED STATES MAGISTRATE JUDGE**